We'll begin with Battle v. Sanchez. May it please the court, my name is Victoria Dorfman, I'm a court-appointed pro bono counsel for Mr. Battle. Oh, that reminds me of one more thing I have to tell you about arguing. The acoustics in this courtroom are not so good. So if we look a little blank, it's probably because we can't hear you and don't understand what you're saying. You have to really speak up in this courtroom. I'd like to reserve two minutes for rebuttal. Because of the limited time, I'd like to focus on why it was error for the district court to grant summary judgment to defendants on Battle's retaliation claim. The court did so by concluding that there was no retaliatory motive. But the record shows that there are conflicting versions of the events and there are suspicious circumstances which indicate that summary judgment was premature. If I may run through them briefly. Battle alleges that the guards searched his cell in retaliation for earlier lawsuit he filed against the guards. Counsel, I don't see what else they could do. The man has more than a six cubic feet. And the more junk you pile up in the cell, it strikes me there would be a risk of cockroaches and mice and rats to the other prisoners. Plus, it's easier to hide things, a shiv, dope, whatever, the more junk you have piled up in your cell. Your Honor, Battle admits that he amassed more than over six cubic feet. But the issue here is the search was not an ordinary search which was just designed to bring down the volume down to a required maximum. Circumstances of the search and the items that were confiscated point that it was targeted specifically at Horton Battle. So, for instance, the guards confiscated the print wheels for his typewriter on which he relied for medical reasons to communicate with the courts. They probably don't take that much space, don't pose sanitary risks, any danger, yet they took them. Did they take the typewriter or just some of his many print wheels and ribbons? My understanding is from his complaint that they took the accessories for typewriter which made it impossible for him to use it. They also took such things as the keepsake watch that his wife gave him 25 years ago. Did he ever put in a claim saying you've got my keepsake watch, give it back? Yes, he did file administrative grievances. He also – Could you point me to that in the excerpt? Yes, it's the beginning of the record. It's pages 6 through 10. 66 and 67? No, 6 through 10, I'm sorry. Does the record indicate what they left in the cell? In other words, we know what they took, but do we know what they left? I'm not sure the record fully indicates that. The problem with the record is that it's spotty and incomplete, and even some of the pages are not fully readable. The problem here is in addition to taking the items, the way the guards conducted the search was designed to hurt battles. Back up to my previous question. 6 through 10 really does not answer it. That's the list he put – listen to me. That's the list he put on his complaint in court. And what I'm looking for is whether he told the people that ran the prison, you took my watch, give it back. If you look at page 8, it's inmate early appeal form. Page 9, that's a narrative as well. It was all attached to the complaint. But this is where he's explaining what happened during the search. It says – I see. Okay. And in that very narrative, he also explains that he was told he doesn't have any dam rights, was stuffed into wheelchair, and went into the shower for two hours while the search was being conducted. He resides in a medical facility. Surely there must be more appropriate accommodations for a disabled prisoner other than wheelchair in the shower. And also being in the shower away from the cell while – I still don't see the watch here. I must be missing it because it's handwritten. I see that they took some of his ribbons and highlighters and print wheels. Now, I used to have typewriters that used print wheels. You don't need ten of them. You just need one of them if you're going to have access to the court. And I don't see where they took all the print wheels. They took his $300 designer shoes, he says, that were never worn. I don't see the watch, but I must be missing it. Well, under the book on page 6, which is the list before the narrative. Well, 6 is what he gave the court, I think, isn't it? I think it was both to the court and to the administrative grievances. The very first thing is sake of Ward's watch. Who's to say that? It's the very first item on the list. I see the watch on 6, but I don't see where it says he gave that to the prison. It looks like he just gave it to the court. Well, I think that was attached. See, by the time he gives it to the court, they can't very well be giving him anything back or rooting through his pile. Well, Your Honor, my understanding, again, from this limited record, is that that list was also given to the prison officials. And there were several narratives which included his unhappiness about having his watch confiscated and other items. But it's not only his watch. It's the way they treated him during the search. They put him away in the shower. They never gave him the opportunity to dispose of the confiscated items, which California regulations clearly provide for. He could have given them to charity, sent them back home, given them to the institution. But he was never given that choice. And the circumstances taken together indicate that the search was not an ordinary search. It was done to hurt Battle and to retaliate against him. And what's the evidence of retaliatory motive? Well, the evidence is twofold. One is timing. The search occurred two days after the status report was filed. And that was the turning point in a lawsuit previously mired in discovery. And as the court recognizes, Battle accumulated a lot of extra property, which could have been searched on the same sanitary grounds. But doesn't Sanchez submit an affidavit or declaration that says that there was an awareness of litigation but not of any specific litigation by Mr. Battle? Well, there are two points. One, Sanchez was actually part of the lawsuit. I think it's Bonacorsa which said that she didn't have the awareness. But as Unit 1 captain, she had access to records dealing with infractions that would deny the prisoner privileges. So Battle was in C status because of his prior lawsuit against Sanchez. And Bonacorsa knew that, and there is evidence in the record where she told Battle that, well, because of your C status, you're not allowed to possess TV or have some other privileges. And moreover, general blanket denials by the guards here just are not enough to grant some re-judgment, given all the circumstantial evidence. But let me back up to retaliatory motive for just a minute. Yes. I'm not sure that he's established a genuine issue of fact on whether the search was in response to his litigation or any protected activity. But what I'm thinking is, suppose it was. Just suppose hypothetically it was. If you have a prisoner and you're a warden and you've been kind of lax about enforcing the six cubic feet requirement, and then you see that the guy is getting a little truculent and combative in his feelings, it seems like even if you didn't want to punish him just for being a troublemaker, you'd still need to take special care for the other prisoners and the guards in making sure he hadn't hidden a shiv or something to protect himself or engage in aggression against others. That is correct, Your Honor, but retaliation could be a motivating factor here. And I think the disagreement on the versions of the events and the circumstances such as not allowing Buttle to dispose of his property according to regulations, putting him in the wheelchair, causing him substantial pain, locking him in the shower, confiscating items that should not probably have been confiscated in good faith, given that there was so much other property, all indicate that there are at the very least disputed issues of material fact and the summary judgment was premature at this point. Also, the facts must be viewed in a way most favorable to Buttle because he's a non-moving party, and he's a prosaic litigant, which also means that court treats such submissions in a liberal manner. I'd like to reserve whatever I have for you, Buttle. Thank you, counsel. Thank you. Thank you. Counsel? Good morning, Your Honors. May it please the Court, Stanton Lee on behalf of Defendants Bonacorso and Sanchez. Could you speak up a little? Certainly. Stanton Lee on behalf of Defendants Bonacorso and Sanchez. The district court was proper in granting defendants motion for summary judgment on grounds that plaintiff had abandoned his retaliation claim on grounds that there were no disputed issues of fact with regard to the due process or property deprivation claim. Is it true that the defendant did not receive a Klingeli notice after you made your motion for summary judgment? I'm sorry, did not receive a? Klingeli notice. Our Rand v. Roland and Klingeli require that notice be given to the defendant, an incarcerated prosaic defendant, advising him of what summary judgment means. I didn't see anything in the record that would indicate that he received a Klingeli notice, which would apprise him that he had to oppose with affidavits after your summary judgment motion was filed. It's my understanding that at the time of issuing the scheduling order, the court in that order identifies what's necessary in order to oppose a dispositive motion. Yes, I did see an early reference, but it was on a service form that said if a summary judgment motion, if a summary judgment motion, not even if a summary judgment motion, as you must oppose it, but it was a direction on the marshal service to serve your client. It wasn't anything that was noticed to the defendant. And that was two or three years before this. I mean, that may or may not be sufficient, but I think my question was, is it accurate that there's no new, any Klingeli notice after or during the time you filed your summary judgment? After the filing of summary judgment, I don't believe that the defendant served a notice. However, if he did not respond. Right. You see, this is the problem I have is when the district court says you've abandoned your claims, I'm deeming them waived, and if he didn't receive an adequate notice under Klingeli, that may be an issue. So I realize that's not part of the briefing, but I wanted to clear up my understanding. Even assuming that he did not abandon his retaliation claim, of the four elements necessary to establish a retaliation claim, he fails to meet three. Most importantly is that of causation. Plaintiff bases his argument and indeed hangs his hat on a temporal relationship between the time that the search occurred and a filing that occurred in a separate lawsuit wherein he named Sanchez and challenged prison grooming regulations. His claim is that because of a filing in that prior lawsuit, he was subject to retaliation and the retaliatory search. That's not supported by the facts and that's not supported by the evidence. What we have is evidence in the form of two declarations, one by Bonacorso and one by Sanchez. Bonacorso's sworn declaration or penalty of perjury indicates that as the unit captain, she's responsible for maintaining the orderliness, the cleanliness, and indeed the safety and security of the unit on a daily basis. The evidence demonstrates that Mr. Battle had personal property in excess of six cubic feet, which is regulated by the California Code of Regulations. But they could have, she could have gone in at any time, had they meant doing daily searches over the past, you know, any number of months and conducted the search. And I think the idea, I mean, on summary judgment, this is purely summary judgment, so we have to draw the inferences in favor of the defendant here. So isn't there an inference, a permissible inference, that if no search has been done and at the time the search is conducted that the searching party has just been sued, that it might be in response to that? Is that a permissible inference? I suppose it is a permissible inference. However, it's contradicted by the evidence that we have here. Battle has not provided any evidence, and indeed in his pretrial statements identified no disputed issues of fact in that regard. What we have is evidence that was undisputed supplied by the defendant. The Court has said that sheer speculation, conclusions of hypothetical retaliation is not enough to suffice for a claim of retaliation. Although you can allege that there is a temporal relationship between the alleged retaliatory act and the protected conduct, you still have to come forward on what you can do. You have to come forward with evidence in order to create a tribal issue of fact. That wasn't done in this case. Indeed, in the cases that have been decided previously, including Pratt v. Rowland, the Court dealt with a claim that there was a temporal relationship. Plaintiff claimed that there was a temporal relationship between what he had done and the retaliatory act. The Court, looking to the evidence, then said this is nothing more than sheer speculation. That's the case here. Plaintiff claims that because there was a filing in another lawsuit, he was subject to retaliation. Bonacorso, who was the individual who initiated the search, wasn't even involved in that litigation. There's no evidence to suggest she knew about that litigation. She was never served with a copy of that litigation. The allegation of the plaintiff in that case is that because she's the facility captain, she must have knowledge of all inmate lawsuits against all the correctional officers. There's no evidence to suggest that in this case. May I switch gears just for a second because I have a question on another topic, and that is the access to the courts claim. Now, the district court didn't rule on that claim, nor the ADA claim that it raised on appeal. Your position is that those were never presented to the district court. He does say in his handwritten complaint that he was denied access to the courts, and he underlines that in the same way that he underlines his takings clause claim. Why isn't that enough? To assert the access to the courts claim. To the extent that it's identified in a 602 inmate complaint is one thing. A complaint which was attached to the inmate appeal. Right. An inmate appeal which was attached to the complaint as battle set forth for the purpose of demonstrating that he exhausted administrative remedies. The complaint itself is clear. The complaint is titled that it's for deliberate deprivation of property. Now, in the foregoing, in the introductory paragraph, it indicates that he is seeking damages relating to deprivation and retaliation. There's nothing in it that suggests that he's seeking a claim based on denial of access to court. This is further supported by the record as a whole. If you look at the record as a whole, when defendants moved for motion to dismiss, the court indicated in its order that the defendants would proceed on the retaliation claim and the property deprivation claim. The plaintiff never took issue with that, never indicated that. He still felt that he had two additional claims which were not addressed by the court in his pretrial statements to the court. It doesn't indicate that in addition to retaliation and due process, he has an additional claim out there for ADA violations or he has an additional claim out there for denial of access to court. Counsel, let's say hypothetically he did. Did he claim or was it shown to be the fact that his typewriter and all of his print wheels and ribbons were taken or was he left his typewriter and at least one or more ribbons and one or more print wheels? My understanding of the records is that the excess material was taken. The excess print wheels were taken. I don't see anything in the record. You know, when you say excess, it's sort of like saying trust me. Rather than knowing that you think it's excess, I'd like to know, did he still have a typewriter or a print wheel and a ribbon? My understanding is he still had a typewriter. And my understanding is that it was still usable. How do we know that? That's not particularly clear. How do we know that from the record? The reason that's important, I think, is if you have a lawsuit or if we know that this is a litigious prisoner and if you take away his, he's disabled, there's a finding he needs the typewriter to communicate. If you leave him the typewriter but no ribbon, well, that's, that may be significant. If, as Judge Kleinfeld says, you leave him a typewriter and a ribbon or two, maybe it's not so much. Maybe it's excess property. Where do we, how can we, where do we look in the record to find it? I'm looking at the record. It's clear from the declarations supplied by the defendants, by Bonacorso and Sanchez and Bowman, that the only property that was taken from him was property that wasn't listed on his personal property list. That personal property list sets forth everything that he's entitled to have. And presumably it would include a typewriter that has ribbons that work. So if we looked at the personal, if we looked at the personal property list, that would give us the best indication of what he had. It would give, it would tell us the personal property that is approved by the prison that he can have under the California Code of Regulations. If he has... I'm pleased to say he can't have five cubic feet of typewriter ribbons or wheels if he wants that. I mean, why is he only allowed a certain amount? If he wants to use up his allocation of, you know, personal property and typewriter ribbons, why can't he do that? Absolutely. If he wants to have six cubic feet of extra print wheels, he can have that. However, personal property needs to be identified on a personal property list for the prison, so the prison knows exactly what material belongs to the inmate that hasn't been taken from another inmate, that is, materials that he shouldn't have. In this case, the personal property list didn't include 10 or 20 print wheels. The declaration in the evidence shows that the property that was identified on the personal property list was left behind, and only excess material that was not identified was taken from the cell. So he said he had 10 or 20 print wheels, and they took eight or nine? He alleges that X number of print wheels were taken. I don't recall the exact number. Eight or nine. He says he's got 10 in his complaint, five ribbons. He had two yellow highlighters, one black picker roller pen, goes on and on. He's got boxes of macaroni and cheese. I mean, it's a whole bunch of stuff. There's no doubt about that. I mean, it's odd that if this is such a big deal, it hadn't been confiscated before. But we don't know on this record what was left except through inference. Is that what we're saying? No. We know on the record that what was left is what was identified on his personal property list. What is that, though? I believe it's the declaration of Gomez, who is the individual who collected It would be nice to just have page numbers. It looks like a homeless guy with shopping carts full of stuff. And what we need to know is, at the end of it all, does he still have a way he can type something to send to the court? I guess he's not homeless. He's got a home. But that's what all the stuff looked like. I'm looking at the Gomez declaration. All it says is that we took items that weren't on the list but didn't say what the list was. I don't see it in the Gomez declaration. What the Gomez declaration says, I think, is before we took any items from his hospital room area, we verified whether the item was on his property inventory. But I don't see what the inventory was. Maybe if you have a citation of the record, it would be helpful to us. You could submit later. Yes. Thank you, counsel. Thank you. Counsel? I'd like to make a couple of quick points. It's not just the timing but the circumstantial evidence of the search, as we discussed particular items that were confiscated, and flaunting of regulations such as putting him away in the shower, not allowing him any choice in disposing of his property. As to whether we know of them. Along with the typewriter ribbons, they took macaroni and cheese and shampoo and a whole bunch of other stuff. I mean, it's not just that they went in and took the implements by which he could file a lawsuit. Well, I mean, according to Buttle's allegations, the taking of typewriter tapes denied him access to court. Buttle also alleged that his property card has been tampered with. And actually, if you look in the record on R149 through 151, there are very bad photocopies of property cards in the list. So it's not clear from the record exactly what was taken. You do have Buttle's allegation that he was denied access to court, which allows us to And that shows, again, why summary judgment wasn't appropriate. In this case, there are more issues to be explored and there are enough suspicious circumstances that suggest that summary judgment was premature. Thank you, counsel. Battle v. Sanchez is submitted. Do you want to hear it now? Which you can just give it to the network. Thank you both. Next, we'll hear United States v. Gemez. United States v. Gemez is submitted.
judges: Kleinfeld, Thomas, Burgess